# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4469 | **DATE** | 12/4/2000 |
| **CASE TITLE** | | Kepple vs. Apfel | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter memorandum opinion and order. The commissioner's decision is hereby affirmed. Plaintiff's motion to reverse the final decision of the Commissioner is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

2
number of notices

DEC 0 8 2000
date docketed

docketing deputy initials

12/5/2000
date mailed notice

ED-7
FILED FOR DOCKETING
00 DEC -7 PM 1:00

Date/time received in central Clerk's Office

SM
courtroom deputy's initials

Document Number

15

SM
mailing deputy initials

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GERARD C. KEPPLE, )<br><br>    Plaintiff, )<br><br>v. )<br><br>KENNETH S. APFEL, Commissioner of the )<br>    Social Security Administration, )<br><br>    Defendant. ) | Case No. 99 C 4469<br><br>Magistrate Judge Ian H. Levin |

DOCKETED

DEC 0 8 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Gerard C. Kepple ("Plaintiff") seeks judicial review pursuant to the Social

Security Act, 42 U.S.C. § § 405(g) and 1383(c)(3) of a final decision of the Commissioner of

Social Security (the "Commissioner") denying his application for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI"). Plaintiff seeks review alleging that the

Commissioner's determination that he is not disabled is not supported by substantial evidence

and that the Commissioner erroneously construed applicable statutory and regulatory law. The

Defendant has filed a brief requesting that the Commissioner's decision be affirmed and

Plaintiff's motion for reversal be denied. For the reasons set forth below, the court affirms the

Commissioner's decision and denies the motion for reversal.

## PROCEDURAL HISTORY

Plaintiff initially applied for DIB and SSI benefits on November 10, 1994. (R. 71.)[1] He

alleged that he had been disabled since April 1, 1990 from diabetes, kidney failure, retinopathy

---

[1]References are to the certified administrative record prepared by the Commissioner and
filed with this court pursuant to 42 U.S.C.§ 405(g).

(inflammation of the retina), high blood pressure, a heart murmur, nerve damage, and fatigue. (R. 71, 74, 97.) Plaintiff previously received DIB through September 30, 1992. (R. 94.)

Plaintiff's application for benefits was denied on March 20, 1995. (R. 76, 80.) On July 31, 1995, Plaintiff filed a Request for Reconsideration, but it was subsequently denied. (R. 86.) Plaintiff filed a Request for Hearing before an administrative law judge ("ALJ") on September 20, 1995. (R. 92.)

On July 2, 1997, Plaintiff appeared with counsel and testified at a hearing before an ALJ. (R. 30-70.) Plaintiff, a vocational expert, and medical expert were present and testified. (R. 33.) On September 17, 1997, the ALJ denied Plaintiff's disability applications finding, *inter alia*, that he could perform a restricted range of sedentary work. (R. 14-20.)

On October 14, 1997, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council. (R. 9.) The ALJ's decision became the agency's final decision when the Appeals Council denied Plaintiff's review request. (R. 5-6.) *See* 20 C.F.R. § § 404.979; 416.1479. Pursuant to 42 U.S.C. § § 405(g) and 1383(c)(3), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## LEGAL STANDARDS

### I.    STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. The Social Security Act at 42 U.S.C. § 405(g) establishes that the Commissioner's findings as to any fact are conclusive if they are supported by substantial evidence. *See also Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Pearles*, 402 U.S. 389, 401, 91

S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brewer*, 103 F.3d at 1390. The court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Brewer*, 103 F.3d at 1390. Conclusions of law are not entitled to deference, however. Thus, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## II.    STATUTORY AND REGULATORY FRAMEWORK

To receive disability benefits, a SSI or DIB claimant must be "disabled" as defined by The Social Security Act. *See* 42 U.S.C.§ 423(a)(1)(D); 42 U.S.C. § 1382(a); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993). An individual is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). *See also Jones v. Shalala*, 10 F.3d 522, 523-24 (7th Cir. 1993). To satisfy this definition, an individual must have a severe impairment that renders him unable to do his previous work or any other substantial gainful activity that exists in the national economy. *See* 20 C.F.R. § 404.1505(a).

The Social Security regulations delineate a five-step process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b). If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination

of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. Pt. 404, Subpt. P, app.1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. See Brewer, 103 F.3d at 1391.

If the impairment does not so limit the claimant's remaining capabilities, the fourth step is that the ALJ reviews the claimant's "residual functional capacity ("RFC") and the physical and mental demands of his past work. RFC is a measure of what an individual can do despite the limitations imposed by his impairments. See 20 C.F.R. §§ 404.1545(a), 416.945(a). See also Social Security Ruling 96-8p (1996). If the claimant can perform his past relevant work, he will be found not disabled. See 20 C.F.R. § 404.1520(e).

For the fifth step, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant -- in light of his age, education, job experience and functional capacity to work -- is capable of performing other work and that such work exists in the national economy. See 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). See also Brewer, 103 F.3d at 1391.

## BACKGROUND

## I.    PLAINTIFF'S TESTIMONY

Plaintiff was twenty-nine years old at the time of the ALJ's decision. (R. 34, 74.) He had graduated from high school and had taken college courses. (R. 36.) Plaintiff alleged that he became disabled on April 1, 1990 as a result of numerous symptoms; including, diabetes, kidney

failure, retinopathy, high blood pressure, a heart murmur, and nerve damage. (R. 7.) Plaintiff testified that he was primarily disabled due to his poor eyesight and fatigue. (R. 36-37.)

Plaintiff testified that he had diabetes for most of his life which caused retinopathy and kidney problems. (R. 41-43.) Plaintiff underwent ten to twelve laser surgeries on his eyes between 1988 and 1989 which left him with blurred vision. (R. 41.) Plaintiff wore a contact lens in his left eye, but the vision in his right eye was so bad that he did not wear one in that eye. (R. 44.) Plaintiff testified that he suffered from blurred vision after looking at an object for ten to fifteen minutes and that he did not read because of his vision problems. (R. 44-45.) Furthermore, Plaintiff testified that he had cataracts in both eyes. (R. 41-42.)

Plaintiff also complained of swelling in his hands and feet, chest pains, high blood pressure, high cholesterol, and a bad heart valve. (R. 41-42, 49.) Plaintiff testified that he had daily chest pain which lasted about ten minutes and daily swelling which lasted for several hours. (R. 47-48.) Plaintiff also complained of daily fatigue, which he associated with caring for three small children, the stress of being a single parent, and diabetes. (R. 45.) Plaintiff testified that medicine helped control his conditions. (R. 42-43.) Furthermore, Plaintiff testified he can lift ten or twenty pounds, walk for two blocks, and stand for thirty minutes. (R. 47.)

At the July 2, 1997 hearing, Plaintiff testified that, for the past two years, he had lived with his parents and three children, aged two, three and six. (R. 35, 46.) Before that Plaintiff and his children had lived with his girlfriend. (R. 46.) Plaintiff testified that he was his children's primary care giver. (R. 46, 99A.)

On November 10, 1994, Plaintiff reported that he lived with his girlfriend and two children (R. 99A.) While his girlfriend worked, Plaintiff cared for the children and did most of

the cooking. (*Id.*) He was able to watch television, visit with friends and relatives, and drive a car. (*Id.*)

## II.    MEDICAL EVIDENCE

On November 16, 1989, Dr. William Miller examined Plaintiff. (R. 157.) Dr. Miller diagnosed diabetes mellitus and noted that Plaintiff had kidney disease (i.e., he was nephrotic). Dr. Miller prescribed medication for Plaintiff's condition. (R. 160.)

From August 1988 through April 1990, Dr. Mark J. Daley treated Plaintiff's eye impairments. (R. 135-52.) During that time period, Plaintiff underwent laser eye surgery. (R. 135-52.) On March 5, 1990, Dr. Armburst noted that Plaintiff was taking insulin and that his diabetes was under "good control." (R. 132.) On April 18, 1990, Dr. Daley noted that Plaintiff had 20/30 vision in one eye and 20/80 vision in the other. (R. 135.)

On March 1, 1990, Dr. Miller concluded that Plaintiff's diabetes and kidney disease were stable. (R. 155.) Dr. Miller, again, diagnosed Plaintiff as having diabetes mellitus with kidney disease (nephropathy) on May 3, 1990. (R. 154.) Plaintiff was subsequently asked to participate in a study to test a new drug for kidney disease. (R. 154.)

On September 15, 1992, Dr. Harry Rubinstein, a nephrologist, by letter, said that Plaintiff had diabetes with advanced retinopathy and was nearly blind. (R. 161.) Dr. Rubinstein stated that Plaintiff was disabled due to his eye impairment. (R. 161.) Dr. Rubinstein also stated that Plaintiff had nephropathy and neuropathy (a disturbance of the central nervous system) that would be progressively disabling and had already caused functional limitations for Plaintiff. (R. 161.)

Treatment records for the period April 1993 through December 1993 showed that

6

Plaintiff's high blood pressure and diabetes were controlled and stable. (R. 178-83.)

On February 24, 1994, Plaintiff's physician was concerned about Plaintiff's lack of compliance with his dietary restrictions. (R. 212.)

On October 21, 1994, Plaintiff's diabetes was out of control and Plaintiff had not sought treatment from an endocrinologist as his physician had advised. (R. 210.)

On November 3, 1994, Plaintiff's echocardiogram showed mild to moderate mitral valve regurgitation. (R. 184.) The test also showed findings that were compatible with hypertropic cardiomyopathy, but further clinical correlation was required to make a diagnosis. (*Id.*)

On November 8, 1994, Dr. Steven Bielski, an endocrinologist, examined Plaintiff. (R. 192.) Dr. Bielski noted that Plaintiff had retinopathy in both eyes and had laser surgery three to four years earlier. (*Id.*) Plaintiff informed Dr. Bielski that he had developed proteinuria (excess protein in urine) about five years ago and that he was taking medication for it. (*Id.*) Plaintiff reported that he was not following a diabetic diet and he did not monitor his glucose. (*Id.*) Dr. Bielski noted that Plaintiff had no paresthesia (burning or prickling in the absence of stimulus) or sores on his feet, but complained of some hyperethesia (a painful sensation from normally painless touch stimulus) on the bottom of his feet. (*Id.*) Plaintiff did not have hyperglycemic or hypoglycemic episodes, headaches, nightmares, or diaphoresis (sweating) at night. (*Id.*) Dr. Bielski diagnosed Plaintiff as having diabetes mellitus with proteinuria and retinopathy. (R. 193.) Dr. Bielski recommended diabetic education and glucose monitoring. (*Id.*)

On December 10, 1994, Dr. Mark Daley, an ophthalmologist, completed an ophthalmologic report. (R. 194.) Dr. Daley said that Plaintiff had diabetic retinopathy and a cataract. (*Id.*) Plaintiff's corrected visual acuity was 20/60 in both eyes. (*Id.*) Plaintiff also had

normal visual fields. (R. 195.) Dr. Daley said that Plaintiff would require cataract surgery in the future on his left eye, and that reading, lifting, and exposure to irritants would not further impair Plaintiff's visual function. (*Id.*)

On December 23, 1994, Dr. Rubinstein reported that Plaintiff had diabetes with nephropathy. (R. 214.) Dr. Rubinstein reported that Plaintiff had good compliance with therapy. (*Id.*) Dr. Rubinstein did not address Plaintiff's visual acuity or visual complications. (*Id.*) He stated that Plaintiff had some neuropathy in the form of abnormal sensation in his feet. (*Id.*)

On February 7, 1995, Dr. Robert Patsy, a state agency physician, reviewed the medical evidence and concluded that Plaintiff could perform sedentary work that did not require that Plaintiff have 20/20 vision. (R. 225-32.)

On March 14, 1995, Dr. Harry Bergmann, a state agency physician, reviewed the medical evidence and concluded that Plaintiff was not disabled. (R. 129-30.)

On April 25, 1995, Dr. Daley provided an ophthalmologic report. (R. 217.) Dr. Daley diagnosed Plaintiff as having diabetic retinopathy and a cataract in his right eye. (*Id.*) Plaintiff's best corrected vision was 20/50 for the right eye and 20/25 for the left eye. (*Id.*) Dr. Daley reported that Plaintiff's eyes were stable and as in December, 1994, he reported that reading, stretching, lifting and exposure to irritants would not cause Plaintiff's vision to deteriorate. (R. 218.)

On May 25, 1995, Dr. Alan Hefner provided an ophthalmologic report. (R. 222-24.) Dr. Hefner reported that Plaintiff had diabetic retinopathy and a traumatic cataract in his left eye. (R. 222.) Dr. Hefner indicated that Plaintiff's corrected vision (with glasses) was 20/60 in his right eye and 20/40 in his left eye. (*Id.*) Dr. Hefner indicated that Plaintiff's employability would

8

improve if he wore contact lenses. (*Id.*) Furthermore, Dr. Hefner indicated that Plaintiff's ability to perform work-related activities would not be affected. (R.223.)

On July 25, 1995, Dr. Douglas Gover, a state agency physician, reviewed the medical evidence and concluded that Plaintiff was not disabled. (R. 127-28.)

During the months of October and November, 1996, a physician diagnosed Plaintiff with uncontrolled diabetes and high-normal blood pressure. (R. 263.)

In April 1997, a physician questioned Plaintiff's compliance with treatment, stating that he should have been seen three months ago. (R. 260.) The physician diagnosed Plaintiff as having diabetes with early nephropathy. (R. 259.)

## A.    Medical Expert ("ME") Testimony

Dr. Glickman, an internist and rheumatologist, reviewed Plaintiff's medical reports and testified at the administrative hearing on July 2, 1997. (R. 49-54, 255-58.) Dr. Glickman stated that Plaintiff had had diabetes since he was a year and a half old. (R. 49.) Plaintiff had further complications from diabetes, including kidney disease (nephropathy), numbness and tingling in his feet, and retinopathy. (R. 50.) Dr. Glickman said that although Plaintiff had nephrotic syndrome in 1989, as demonstrated by excessive protein in his urine, he no longer had significant kidney problems. (*Id.*)

Dr. Glickman testified that Plaintiff had retinopathy in both eyes and a cataract in one eye. (R. 50.) Plaintiff had 20/30 vision in one eye and 20/100 in the other one. (*Id.*) Dr. Glickman stated that Plaintiff's complaints of blurred vision might be caused by retinopathy and by the cataract. (*Id.*) He noted that Plaintiff's vision was deteriorating. (R. 51.)

Dr. Glickman noted that Plaintiff had a mild cardiac problem of mitral regurgitation and

9

mild hypertension that was reasonably controlled with medication (R. 50.) He stated that mitral valve regurgitation could cause symptoms, but in Plaintiff's case, there was no evidence of real dysfunction. (R. 54.) Dr. Glickman also noted that Plaintiff's complaints of chest pain and swelling in his hands and feet were not substantiated by objective medical evidence. (R. 53-54, 58.)

Dr. Glickman testified that Plaintiff's impairments caused functional limitations. (R. 52.) Dr. Glickman stated that given Plaintiff's complaints of fatigue, and hand and feet swelling, he should be restricted to sedentary work that involves only occasionally lifting ten pounds. (R. 52, 57-58.) Dr. Glickman said that an individual who has 20/30 vision in one eye could function "very well." (R. 61.) Thus, an individual could see objects near him, but could not see as accurately at a distance. (*Id.*)

### B. Vocational Expert ("VE") Testimony

At the July 2, 1997 administrative hearing, the ALJ asked the vocational expert to describe those jobs in the national economy that an individual with a profile similar to Plaintiff's could perform. (R. 58, 62.) The vocational expert first noted that Plaintiff had minimal work experience and that he did not have any transferable skills. (R. 60-62.) The vocational expert testified that Plaintiff could perform unskilled, sedentary work; such as, that of, a cashier (1,000 positions), a charge account clerk (300 positions), a telephone quotation clerk (300 positions) and an assembler (1,800 positions). (R. 62-63.) The vocational expert testified that an individual who had 20/30 vision in one eye and 20/100 vision in the other eye, could perform all of the aforementioned jobs. (R. 65.) Furthermore, the vocational expert stated that an individual who could only read for ten minutes or look at an object for only fifteen minutes before having to rest

his eyes for a few minutes, could perform all of the aforementioned jobs. (R. 66.)

## III.    THE ALJ'S FINDINGS AND DECISION HEREIN.

The ALJ found that Plaintiff had not engaged in any substantial gainful activity since November 10, 1994. (R.19.) The medical evidence established that Plaintiff has diabetes mellitus with neuropathy and retinopathy, but he does not have an impairment, or combination of impairments, listed in, or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (*Id.*) Because the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ, *inter alia*, assessed Plaintiff's residual functional capacity ("RFC") to determine what Plaintiff could do despite his limitations.

After reviewing the testimony and medical records, the ALJ concluded that Plaintiff retained the RFC to perform a restricted range of "sedentary" work. (R. 19.) *See* 20 C.F.R. 404.1567; 416.967. The ALJ determined that Plaintiff has the RFC to perform work-related activities except he cannot lift and/or carry more than 10 pounds at a time. (*Id.*) Plaintiff is limited to occasional standing and walking. (*Id.*) He also cannot perform jobs which require peripheral vision. (*Id.*) Plaintiff has no other limitations, either exertional or non-exertional. (*Id.*) *See* 20 C.F.R. § 404.1545; 416.945.

Considering Plaintiff's RFC, the ALJ determined that Plaintiff is qualified to meet the requirements of skilled/semi-skilled work which exists in significant numbers in the national economy. (R. 20.) *See* 20 CFR 404.1568; 416.968. Examples of these types of jobs include cashier (1,000 jobs), security monitor (22 jobs), charge account clerk (300 jobs), telephone quotation clerk (300 jobs) and assembly work (1,800 jobs.) (*Id.*) Therefore, the ALJ concluded that considering Plaintiff's RFC, age, education and work experience, Plaintiff was not disabled

and he was capable of performing other qualifying work. (*Id.*)

**ANALYSIS**

Plaintiff's threshold argument is that the ALJ's September 17, 1997 determination that he is not disabled is not supported by "substantial evidence." (Pl's Br. at 15.) Plaintiff alleges, *inter alia*, that (1) the ALJ ignored medical evidence of record favorable to the claimant; (2) the ALJ cannot "play doctor;" (3) the ME at Plaintiff's hearing was neither a nephrologist or ophthalmologist so he was not competent to testify; (4) the ALJ erred by asserting that Plaintiff failed to follow a prescribed treatment plan; (5) the ALJ failed to sufficiently analyze Plaintiff's daily living activities required by SSA regulations. (*See generally*, Pl.'s Br.)

I.      **The ALJ did not ignore medical evidence of record favorable to Plaintiff.**

Plaintiff first asserts that the ALJ ignored medical evidence favorable to Plaintiff. (Pl.'s Br. at 15.) Plaintiff states that the medical record contains substantial evidence that supports Plaintiff's symptoms. (*Id.*) For example, there are numerous reports demonstrating that Plaintiff experienced abnormally high concentrations of creatinine, BUN, alkaline, phosphate, glucose, and glycohemoglobin. (Pl.'s Br. at 16.) This evidence supports Plaintiff's diagnoses from several medical examiners that Plaintiff has diabetes melitis, nephropathy, proteinuria, diabetic retinopathy and neuropathy. (*Id.*)

Plaintiff argues that the ALJ found Dr. Daley's (ophthalmologist) report to be credible even though it indicated that Plaintiff would have no further visual impairments by prolonged or occasional reading, stretching, lifting or irritants. (Pl.'s Br. at 16.) Furthermore, the report indicated that Plaintiff's eyesight was stable even though there was no mention of what effect cataract surgery would have on Plaintiff's retinopathy. (*Id.*) Finally, the ALJ observed that there

was no abnormality with respect to Plaintiff's field of vision. (*Id.*) Plaintiff's best correction was 20/60 bilaterally. (*Id.*)

In its brief, Plaintiff alleges that a letter dated September 15, 1992 written by Dr. Rubinstein (nephrologist) was given little weight because the ALJ determined that it contradicted other medical evidence of record. (Pl.'s Br. at 16.) In his letter, Dr. Rubinstein stated that Plaintiff had diabetes melitis, retinopathy, diminishing eyesight and was nearing blindness. (Pl.'s Br. at 17.) Dr. Rubinstein also made reference to Plaintiff's nephropathy and peripheral neuropathy which were getting progressively worse. (*Id.*) Plaintiff states that Dr. Rubinstein's letter required further analysis and investigation because another physician, Dr. Bielski, a nephrologist who worked at the same clinic as Dr. Rubinstein, wrote a November 8, 1994 letter to Dr. Rubinstein indicating that Plaintiff had diabetes melitis Type I with complications of proteinuria and retinopathy. (*Id.*) Dr. Bielski further informed Dr. Rubinstein that Plaintiff had no complaints of paresthesia or sores on his feet, but that Plaintiff did get hyperethesia on the bottom of his feet. (*Id.*) Moreover, Plaintiff alleges that his complaint of hyperethesia on the bottom of his feet was not addressed by the ALJ. (*Id.*)

Most importantly, Plaintiff alleges that the ALJ did not recognize the various medical problems associated with Plaintiff's diabetes. (Pl.'s Br. at 17-18.) The combination of many symptoms; including, renal failure, proteinuria, hyperethesia and diabetic retinopathy are all interrelated as demonstrated by the various laboratory reports. (*Id.*) The ALJ has made no attempt to ascertain whether the combination of any of the medically demonstrable symptoms exhibited by Plaintiff limit his ability to perform daily living activities or exertional or non-exertional duties required in the workplace. (Pl.'s Br. at 18.) Accordingly, Plaintiff asserts that a

conclusion must be reached that the ALJ misunderstands the medical record or has ignored a significant aspect of it by choosing to highlight only those points which favor the ALJ's position that Plaintiff is "not disabled." (*Id.*)

Plaintiff's final assertion is that the ALJ must articulate reasons for rejecting evidence that is favorable to a plaintiff. (Pl.'s Br. at 18). *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (the ALJ cannot select only that evidence which favors the Commissioner's position). Plaintiff argues that it is clear from the entire medical record that he has chronic renal failure (indicated by a progress note from Dr. Rubinstein's clinic in 1994 showing diabetes melitis with multiple organ involvement). (*Id.*) Plaintiff argues that chronic renal failure is evidenced by the fact that creatinine was about 1.0 in 1989 and that by June of 1994 it had reached a high of 1.7. (*Id.*) The record also shows, through an echocardiogram, that Plaintiff has a moderate mitral valve regurgitation which is indicative of a heart murmur. (Pl.'s Br. at 19.) Moreover, Plaintiff again alleges that the ALJ failed to explain why her rejection of relevant evidence; such as that set forth in the extensive laboratory reports. (*Id.*)

Defendant argues, and the court agrees, that the ALJ's decision was supported by physician opinions. (Def.'s Br. at 9.) For instance, Dr. Glickman testified that Plaintiff had 20/30 vision in one eye, no significant kidney or heart dysfunction and provided no objective evidence of an impairment that caused swelling (*Id.*) Dr. Glickman testified that an individual with 20/30 vision in one eye can function very well. (*Id.*) An individual with 20/30 vision can see at twenty feet what others can see at thirty feet, and therefore, can see objects near him well. (*Id.*) Dr. Glickman said that the objective medical evidence plus Plaintiff's complaints of fatigue

and swelling, directed a conclusion that the Plaintiff be limited to sedentary work. (Def's Br. at 9-10.) Furthermore, Dr. Glickman's opinion was consistent with that of a state agency physician, who reviewed the medical evidence and determined that Plaintiff could perform sedentary work that did not require 20/20 vision (*Id.*) Thus, based on this evidence, Defendants argue, and the court agrees, that the ALJ did consider the medical experts' remarks (including his residual functional capacity) and even though the ALJ did not restrict Plaintiff to tasks requiring a specific visual limitation, the jobs that the ALJ found Plaintiff capable of performing accommodated such a restriction. (*Id.*)

Defendant argues, and the court agrees, that the ALJ reasonably rejected the opinion of treating physician, Dr. Rubinstein. (Def.'s Br. at 10.) In September, 1992, Dr. Rubinstein, a nephrologist, said that Plaintiff was disabled because he was nearly blind. (*Id.*) Dr. Rubinstein, however, provided no objective evidence to support this opinion, and furthermore, his opinion, as the ALJ stated (R. 16-17), was inconsistent with two ophthalmologists' later objective findings which indicated that Plaintiff had adequate vision. (*Id.*) Additionally, in December, 1994, when Dr. Rubinstein was asked to provide specific information regarding Plaintiff's visual acuity, he did not address or comment on it. (*Id.*) Thus, the ALJ reasonably gave Dr. Rubinstein's opinion little weight. (*Id.*) *See* 20 C.F.R. § 404.1527(d) (ALJ gives less weight to an opinion that is unsupported by objective medical evidence or inconsistent with the record as a whole.)

Defendant maintains, and this court finds upon review, that the ALJ complied with SSA policy and Seventh Circuit precedent by considering all relevant evidence and articulating the ALJ's analysis of the evidence sufficiently to permit the court to trace the path of the ALJ's reasoning. (Def.'s Br. at 11-12.) *See* 20 C.F.R. § 404.1529 (ALJ considers all evidence and

gives specific reasons for finding on credibility); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993.) (ALJ need not discuss every piece of evidence, but must articulate assessment sufficiently to enable court to trace reasoning.)   In the case at bar, the ALJ, among other things, discussed the objective medical evidence, the physician opinions, and Plaintiff's medical history (including his medications, physician statements and activity level). (Def.'s Br. at 12.) The ALJ reasonably concluded that this evidence did not support Plaintiff's allegations of debilitating symptoms. (*Id.*)

Defendant claims, and this court agrees, that because the ALJ was not required to discuss every diagnosis or specific abnormality, they did not have to discuss Plaintiff's high creatinine levels. (Def.'s Br. at 12.)  Upon reviewing Plaintiff's record, the ALJ noted that Plaintiff had medically determinable impairments diagnosed by physicians and the ALJ considered all relevant evidence in considering the limiting effects of these impairments. (*Id.*) There was no requirement that an ALJ discuss every finding in every medical report, particularly when, as here, physicians interpreted the reports and determined that Plaintiff could perform sedentary work that accommodated his visual limitations.  (*Id.*)

This court finds that substantial evidence supports the ALJ's conclusion that Plaintiff could perform sedentary work that accommodated his visual limitations.  Based on the record in this case which included Plaintiff's medical record as well as his testimony and that of a medical and vocational experts, the ALJ ultimately concluded that Plaintiff had medically determinable impairments; including, diabetes mellitus with neuropathy and retinopathy that could reasonably be expected to cause symptoms. *See* 20 C.F.R. § 404.1529.  This court finds that the ALJ complied with the SSA regulations by considering all relevant evidence in determining Plaintiff's

credibility and the limiting effects of Plaintiff's impairments. *See* 20 C.F.R. § 404.1529(c); *Pope,* 998 F.2d at 482. *See also Powers v. Apfel,* 207 F.3d 431, 435-36 (7th Cir. 2000) (a court must affirm the ALJ's credibility findings unless "patently wrong.")

## II. The ALJ did not "play doctor."

Plaintiff alleges that the ALJ determined that Plaintiff's diabetes is medically treatable and that his vision, though blurry, is correctable. (Pl.'s Br. at 19.) In other words, Plaintiff assert that the ALJ has succumbed to the temptation of "playing doctor." *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990). In *Sullivan,* the ALJ believed that a plaintiff who played handball once a week could not be considered disabled based upon the ALJ's reading of the medical record. *Id.* The court was reversed.

Plaintiff assert that while diabetes melitis may be medically treatable, the real issue is whether or not the disease can be controlled. (Pl.'s Br. at 19.) For example, Plaintiff's medical records indicate that he does not have well-controlled glucose levels despite the fact that he injects insulin twice a day. (*Id.*) The effect of the instability of his glucose condition requires further information from treating physicians. (Pl.'s Br. at 20.)

Plaintiff further alleges that while Plaintiff's vision is correctable, it too cannot be controlled. (Pl. Br. at 20.) The medical evidence of record clearly demonstrates that Plaintiff's visual acuity fluctuates markedly over time. (*Id.*) The fact that Plaintiff's last best correction was 20/60 in both eyes (reported by Dr. Daley on December 9, 1994) is irrelevant without an explanation from an ophthalmologist regarding why the values appear to fluctuate (report dated May 25, 1995 shows the right eye at 20/60 - 20 ft. and with best correction at 20/400 - 14 in.). (*Id*) Therefore, Plaintiff contends that the ALJ did not believe it sufficiently worthwhile or did

not know enough to ask the ME at the hearing the explain these divergences. (*Id.*) Rather, the ALJ merely concluded that Plaintiff's visual problems would not be significantly limiting. (*Id.*)

Defendant argues, and the court agrees, that the ALJ did not "play doctor" in stating that Plaintiff's diabetes and blurred vision could be treated. (Def.'s Br. at 12.) Rather, Defendant argues, and the court agrees, that the issue is not whether Plaintiff's impairments can be treated, but whether they prevent him from working. (*Id.*) Defendants point out that the physicians who reviewed the medical evidence concluded that Plaintiff could perform a range of sedentary work. (*Id.*)

Defendants assert that there are a significant number of jobs that accommodate Plaintiff's vocational profile and functional capacity. (Def.'s Br. at 14.) The ALJ reasonably relied on the VE's testimony who identified 3,400 unskilled, sedentary jobs that an individual with Plaintiff's visual capacity could perform. (*Id.*) The VE also said that 1,600 of these jobs could be performed by an individual who could read for only ten minutes or look at an object for only fifteen minutes before having to rest his eyes for a few minutes. (*Id.*)

This court finds that the ALJ did not "play doctor" when assessing Plaintiff's vocational profile and functional capacity. Rather, based on the record, as well as Plaintiff's testimony and the ME and VE testimony, substantial evidence supports the ALJ's conclusion that Plaintiff could perform a significant number of relevant jobs despite his impairments; including his visual limitations.

## III.     The ME at the administrative hearing was competent to testify.

Plaintiff puts forth the fact that Dr. Glickman (ME), who testified at the administrative hearing, is not a nephrologist; rather, he has a specialty in internal medicine (with a subspecialty

18

in rheumatology). (Pl.'s Br. at 20-21.) Dr. Glickman is also not an ophthalmologist. (Pl.'s Br. at 21.) Plaintiff, therefore, argues that Dr. Glickman was not able to produce substantive evidence concerning all of the impairments experienced by Plaintiff (because he is not a nephrologist or ophthalmologist.) (Pl.'s Br. at 23.) *See generally, Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1998) (an eye doctor cannot be expected to diagnose mental problems).

Plaintiff contends that the ALJ did not ask Dr. Glickman pertinent questions relating to all of the relevant evidence at the hearing. (Pl.'s Br. at 21.) Plaintiff states that Dr. Glickman did not attempt to provide a detailed explanation of the evidence. (*Id.*) For instance, there is nothing in Dr. Glickman's testimony explaining the significance of the abnormalities disclosed by the laboratory reports. (*Id.*) Furthermore, Dr. Glickman either was unable or unprepared to explain, at the hearing, the specific limitations that diabetic neuropathy, nephropathy, diabetic retinopathy, fatigue, proteinuria have upon Plaintiff's ability to perform exertional and nonexertional activities. (*Id.*)

Plaintiff further alleges that the conclusion reached by the ALJ from Dr. Glickman's explanation of a hypothetical regarding visual acuity did not disclose a significant limitation upon the Plaintiff's visual abilities. (Pl.'s Br. at 21.) The initial hypothetical question posed to the VE should have included restrictions relating to Plaintiff's eyesight. (Pl.'s Br. at 21-22.) Instead, the ALJ decided not to incorporate any visual restrictions in the hypothetical. (*Id.*) The hypothetical question that was used was based on an individual with the same age, education and work experience as Plaintiff. (Pl.'s Br. at 22.) Plaintiff argues that a person with 20/60 vision or 20/400 vision which fluctuates over time does not have normal vision. (Pl.'s Br. at 22.) Plaintiff states that the ALJ is required to develop a better record concerning the impact of the Plaintiff's

visual ability upon his exertional and nonexertional capacities. (*Id.*) *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) (duty to develop a full and fair record).

Plaintiff further asserts that if the ALJ had been motivated she could have obtained explicit, up-to-date medical records and statements from Plaintiff's nephrologists and ophthalmologists that would specifically addressed Plaintiff's medical impairments as they relate to his exertional and nonexertional capacities. (Pl.'s Br. at 23.) Accordingly, because the ALJ failed to obtain needed medical records, Plaintiff asserts that the ALJ ultimately failed to articulate a reasonable path to her conclusions based upon substantial evidence. (Pl.'s Br. at 24.) Furthermore, the evidence the ALJ utilized is substantial only when read in isolation. (*Id.*) Thus, the ALJ's conclusions can only be upheld if they are based upon "reasoned judgment." *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993).

Defendant argues, and the court agrees, that Plaintiff's assertions (1) that Dr. Glickman, who is an internist and rheumatologist, was not qualified to give an opinion about the medical evidence and Plaintiff's functional capacity and (2) that the ALJ did not ask Dr. Glickman the right questions at the administrative hearing are not meritorious. (Def.'s Br. at 13.) Initially, Defendant argues, and the court finds, that both of Plaintiff's assertions fail because Plaintiff did not raise them before the ALJ at the administrative hearing on July 2, 1997. (*Id.*) For instance, Plaintiff, who was represented by counsel at the administrative hearing, did not object to Dr. Glickman's professional qualifications. (*Id.*) Moreover, Plaintiff had the opportunity to ask Dr. Glickman questions and remedy any deficiencies in the ALJ's line of questioning. (*Id.*) Finally, Defendant argues, and the court finds, that Plaintiff's failure to protect his interests at the administrative hearing is not a sufficient reason which warrants reversal of the ALJ's decision.

(*Id.*) *See Ragsdale v. Shalala*, 53 F.3d 816, 819 (7th Cir. 1995).

Defendant avers, and the court agrees, that Plaintiff's argument that the ALJ failed to incorporate visual limitations into the hypothetical question fails because the VE specifically stated that an individual with Plaintiff's visual acuity could perform the jobs cited. (Def.'s Br. at 15.) Furthermore, contrary to Plaintiff's argument, the ALJ properly excluded Plaintiff's "impairments" from the hypothetical question because the ALJ was required to include only those functional limitations supported by the record. *See Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 540 (7th Cir. 1992).

Defendant further contends, and the court agrees, that Plaintiff's argument that the ALJ should have obtained updated medical records from a nephrologist and ophthalmologist is unfounded. (Def.'s Br. at 13.) Defendant argues, and the court finds, that Plaintiff never requested that the ALJ obtain additional medical evidence; thus, Plaintiff has waived the argument. (*Id.*) Furthermore, Defendant asserts, not incorrectly, that the amount of evidence obtained generally rests with the ALJ's discretion. *See Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Finally, Defendant argues, and the court agrees, that Plaintiff's argument fails because he has not show that additional information could have changed the outcome of this case. (*Id.*)

To recapitulate, this court finds that Plaintiff's arguments that Dr. Glickman was not qualified to give an opinion regarding the medical evidence and Plaintiff's functional capacity, and that the ALJ should have obtained up-to-date medical records and statements from Plaintiff's physicians, to be unavailing. With respect to Dr. Glickman's qualifications, the time to raise an objection would have been at the administrative hearing. With respect to the ALJ obtaining up-

to-date medical records, this issue was waived by Plaintiff. Too, the amount of medical evidence to gather is generally within the ALJ's discretion (and there is no allegation or evidence this discretion was abused herein).

## IV. Plaintiff failed to follow a prescribed treatment plan.

Plaintiff acknowledges that a claimant will not be awarded benefits if he fails to follow a prescribed treatment plan. *See* 20 C.F.R. §§ 404.1530 and 416.930. The regulations generally indicate that the consequence of failing to follow a prescribed treatment will be conditioned upon (1) if the prescribed treatment can restore the claimant's ability to work, and (2) if the claimant does not follow the prescribed treatment, he must have a good reason. (*Id.*)

In the case at bar, Plaintiff argues that the ALJ used the fact that Plaintiff did not monitor his glucose and did not follow a prescribed diet as grounds for denying him disability benefits. (Pl.'s Br. at 24.) Plaintiff, thus, asserts that there is no substantive evidence to determine whether his alleged failure to follow a treatment plan has any medically determinable consequences. (*Id.*) Moreover, Plaintiff asserts that there is no substantial evidence in the record that these treatments were ever prescribed. (Pl.'s Br. at 25.) Thus, Plaintiff states the ALJ has failed to adduce substantial evidence for her conclusion regarding Plaintiff's treatment plan. (*Id.*)

Defendant states, and the court agrees, that the ALJ did not deny benefits solely because Plaintiff failed to follow a prescribed treatment. (Def.'s Br. at 11.) Rather, the ALJ considered Plaintiff's noncompliance with treatment in light of the record as a whole and as part of the credibility analysis.[2] (*Id.*) The record showed that Plaintiff frequently did not comply with his

---

[2]An ALJ may deny benefits if a disabled individual refuses to follow prescribed treatment that is clearly expected to restore his capacity to work. *See SSR* 82-59. In the case at bar, the ALJ did not find that Plaintiff was disabled; therefore, she could not and did not deny benefits solely on the ground that treatment would restore Plaintiff's ability to work.

dietary restrictions and did not obtain recommended treatment. (*Id.*) For example, Plaintiff did not follow a diabetic diet, monitor his glucose levels or regularly go to the doctor as instructed. (*Id.*) Furthermore, there were long periods of time in which Plaintiff did not seek any treatment at all. (*Id.*) Finally, the ALJ reasonably concluded that if Plaintiff's symptoms were debilitating, Plaintiff would have pursued treatment and followed his physician's advice. (*Id.*)

This court finds that while Plaintiff did not follow a prescribed treatment plan it was not the basis for him not being awarded disability benefits by the ALJ.

## V. The ALJ sufficiently analyzed Plaintiff's daily living activities.

Plaintiff alleges that the ALJ has failed to sufficiently analyze his activity level in order to make an appropriate determination regarding those daily living activities he is capable of performing. (Pl.'s Br. at 25.) For example, the ALJ states that Plaintiff "discloses a variety of daily living activities which he is capable of performing without any assistance." (R. 17.) For example, the ALJ believes that Plaintiff can take care of his personal needs, but does not perform any household maintenance or engage in recreational activities. (*Id.*) Furthermore, Plaintiff takes care of small children and he still drives. (*Id.*)

Plaintiff further contends that the "Activities of Daily Living Questionnaire" was not sufficiently analyzed by the ALJ in order for it to be used as substantial evidence. (Pl.'s Br. at 25.) For example, Plaintiff states that he is able to take care of his personal needs, such as dressing and showering, but that he doesn't do chores. (*Id.*) Plaintiff stated that his girlfriend did the chores. (*Id.*) Plaintiff contends that the ALJ did not take the fact that his girlfriend did the chores into consideration. (*Id.*) Furthermore, Plaintiff contends that the ALJ does not provide an explanation based on the Activities of Daily Living Questionnaire or the administrative hearing testimony that would lead to the conclusion that Plaintiff can perform work-related duties that

exist in the national economy at the sedentary level. (Def.'s Br. at 26.)

Defendant contends, and the court agrees, that the ALJ's finding that Plaintiff could perform sedentary work that accommodated his vision problems was supported, in part, by Plaintiff's activity level. (Def.'s Br. at 10.) For example, Plaintiff testified that he cared for three children who are under the age of six. (*Id.*) The ALJ reasonably concluded that an individual who could perform the strenuous demands of child care could also perform the demands of sedentary work. *See* 20 C.F.R.§404.1529(c)(3) (activities considered in assessing credibility and severity of alleged symptoms.)

Defendant further argues, and the court agrees, that the ALJ was not required to discuss all of Plaintiff's activities. (Def.'s Br. at 11.) The ALJ properly considered all of the evidence and discussed it sufficiently to permit the court to trace her reasoning. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). Furthermore, the ALJ was permitted to consider Plaintiff's activities, in light of the record as a whole, in deciding Plaintiff's functional capacity and credibility. (Def.'s Br. at 11.)

This court finds that Defendant properly assessed Plaintiff's daily living activities and work-related exertional and nonexertional duties. The ALJ's determination was that based on the medical evidence including the testimony of Plaintiff and the ME and VE that Plaintiff could perform work-related duties that exist in the national economy at the sedentary level.

## VI.    Miscellaneous

The court has carefully reviewed Plaintiff's remaining arguments and finds them unavailing for the reasons set forth in Defendant's responsive memorandum. (*See, e.g.,* Def.'s Br. at 13-14.)

## **CONCLUSION**

In view of the foregoing, the Commissioner's decision is affirmed. The Plaintiff's motion for reversal is denied.

ENTER:

**IAN H. LEVIN**
**United States Magistrate Judge**

Dated: December 4, 2000